UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

  v.

JEREMY CORWIN,

    Defendant-Movant.

Case No. 2:22-cr-156(4)
JUDGE EDMUND A. SARGUS, JR.

**OPINION AND ORDER**

Jeremy Corwin, proceeding *pro se*, moved to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. (ECF No. 193.) The Government responded to Mr. Corwin's § 2255 Motion. (ECF No. 205.) For the reasons below, Mr. Corwin's § 2255 Motion is **DENIED**. (ECF No. 193.)

**I. BACKGROUND**

The Grand Jury returned a single-count indictment on August 23, 2022, alleging that Mr. Corwin and seven codefendants conspired to distribute and possessed with intent to distribute the synthetic cannabinoid K-2/Spice, a schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. (ECF No. 25.) On October 12, 2022, Mr. Corwin signed a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A), in which he agreed to plead guilty to Count One and agreed to the attached statement of facts. (ECF No. 54.)

The statement of facts in Mr. Corwin's plea agreement stated that since October 17, 2018, the Ohio Department of Rehabilitation and Corrections, the U.S. Border Patrol, and the Drug Enforcement Administration had conducted investigations into a Drug Trafficking Organization ("DTO") that had been using commercial carriers and the U.S. Mail to send falsified legal documents that had been saturated with a liquid form of synthetic cannabinoid K2/Spice, a

Schedule 1 controlled substance, into jails and prisons in the Southern District of Ohio. (*Id.* PageID 359.) The drugs were then sold and used by inmates. (*Id.*) The statement of facts explained Mr. Corwin's involvement in the DTO. (*Id.* PageID 359–60.) Mr. Corwin's plea agreement also contained an appellate wavier, in which Mr. Corwin waived his right to attack his sentence collaterally except as to claims of ineffective assistance of counsel or prosecutorial misconduct. (*Id.* ¶ 10.)

The U.S. Probation Office prepared a presentence investigation report ("PSR"). (ECF No. 94.) The PSR included summaries of the offense conduct and Mr. Corwin's criminal history. (*Id.* PageID 552–63.) Based on a total offense level 23 and a criminal history category III, Mr. Corwin's sentencing guidelines range was 57 to 71 months of imprisonment. (*Id.* PageID 571.) Mr. Corwin received a sentence of 37 months, to run concurrently with his undischarged state sentence of 13 months. (ECF No. 121; ECF No. 181, PageID 1141, 1146.) Mr. Corwin was also sentenced to a term of supervised release of 3 years. (ECF No. 121.)

Mr. Corwin filed his § 2255 Motion in March 2024. (ECF No. 193.) At the end of May 2024, the Government moved to stay the briefing deadlines and requested that Mr. Corwin file a waiver of attorney-client privilege. (ECF No. 200.) The Court granted the Government's motion because Mr. Corwin made two ineffective assistance of counsel claims related to conversations between himself and his trial counsel; he had impliedly waived the privilege. (ECF No. 201.) Mr. Corwin filed his attorney-client privilege waiver on June 11, 2024 (ECF No. 202), and the Government responded to the § 2255 Motion on July 15, 2024 (ECF No. 205). An affidavit from Isabella Dixon, Mr. Corwin's attorney in this criminal case, is attached to the Government's response. (ECF No. 205-1.) Mr. Corwin also wrote two letters to the Court related to his § 2255 Motion, which the Court has reviewed closely. (ECF Nos. 207, 211.)

## II. STANDARD OF REVIEW

A prisoner may move to vacate his sentence under 28 U.S.C. § 2255 if he or she can demonstrate that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (citing *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

Where a factual dispute arises in a § 2255 motion, the habeas court must hold an evidentiary hearing "to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). But a hearing is not required in every case, including where "the record conclusively shows that the petitioner is entitled to no relief." *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

## III. ANALYSIS

### A. Mr. Corwin's § 2255 Motion is not moot.

Mr. Corwin was released from the Bureau of Prisons ("BoP") on May 20, 2025. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp (searched "Jeremy Corwin," Register Number: 10381-510) (last visited October 27, 2025). While Mr. Corwin filed his Motion when he was still in BoP custody (*see* ECF No. 193), he was released this past summer and is now serving his three-year supervised release term.

The change in Mr. Corwin's incarceration status, however, does not moot his § 2255 Motion. "Even when an appellant has been released from custody, his case is not moot so long as the appeal 'potentially implicates' the length of the appellant's supervised release term." *Gilbert v. United States*, 64 F.4th 763, 769–70 (6th Cir. 2023) (quoting *United States v. Maken*, 510 F.3d 654, 656 n.3 (6th Cir. 2007) (quoting *United States v. Nissenbaum*, 75 F. App'x 412, 413 n.2 (6th Cir. 2003) (per curiam))); *United States v. James*, No. 1:09-cr-202, 2015 WL 5655979, at *2 n.3 (S.D. Ohio Sep. 25, 2015) ("A prisoner's action is not mooted merely because he was released from prison when he also is serving a term of supervised release.") (citing *Kusay v. United States*, 62 F.3d 192 (7th Cir. 1995) and *United States v. Williams*, No. 02-CR-80958, 2007 WL 1976953 (E.D. Mich. July 2, 2007)).

The Court turns to the merits of Mr. Corwin's § 2255 Motion.

**B. Mr. Corwin's attorney provided effective assistance of counsel.**

The Sixth Amendment guarantees the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to determine whether ineffective assistance of counsel warrants a new trial. A defendant must demonstrate "(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant." *Simmonds v. Bowen*, 841 F. App'x 838, 840 (6th Cir. 2021) (citing *Strickland*, 466 U.S. at 687).

"Under the first prong of the *Strickland* test, Defendant must show 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *United States v. Leedy*, No. 1:16-cr-036, 2023 WL 3479996, at *6 (S.D. Ohio May 16, 2023) (Black, J.) (quoting *Strickland*, 466 U.S. at 688). *Strickland* instructs that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

4

professional assistance." *Strickland*, 466 U.S. at 689. Courts must avoid "the distorting effects of hindsight" to fairly assess attorney performance. *Id.*

As for the second *Strickland* prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Rather, counsel's performance must be prejudicial to be constitutionally ineffective. *Id.* at 692. To establish such prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Mr. Corwin states two grounds in support of his argument that his counsel was ineffective. The Court examines each in turn.

1. **Ground One**

In ground one, Mr. Corwin asserts that Attorney Dixon was deficient because she

> failed to advise the Court that in order for my time in pre-trial detention to be counted, it must be said as a departure under 5g1.3 to make my sentence retroactively concurrent in order for the [BoP] to be mandated to start my sentence from the date my Judge intended (7-13-2022) as in other cases . . . .

(ECF No. 193, PageID 1177.)

The Government responds with several reasons it urges Mr. Corwin's ground one is without merit. First, U.S.S.G. § 5G1.3 speaks to undischarged terms of imprisonment, rather than discharged, presentencing time, says the Government. (ECF No. 205, PageID 1210.) Remaining time on Mr. Corwin's state sentence was undischarged as of his federal sentencing hearing. (*Id.*) Second, the Government points out, the Court made clear that Mr. Corwin's federal sentence was to be concurrent only to the undischarged portion of Mr. Corwin's state sentence. (*Id.*; ECF No. 181, PageID 1146; ECF No. 121, PageID 754.) The Government also argues that Mr. Corwin's attorney and the United States Attorney concurred on the record that the seven months in federal

5

custody should count toward Mr. Corwin's federal sentence, rather than his state sentence. (ECF No. 205, PageID 1211.)

The Court is unclear on the specific relief sought my Mr. Corwin in ground one. The record shows that on July 13, 2022, Mr. Corwin waived his detention hearing in front of the federal Magistrate Judge and the Magistrate Judge entered an Order of Detention Pending Trial. (ECF Nos. 10, 12.) July 13, 2022 is the date Mr. Corwin references in ground one of his Motion. (ECF No. 193, PageID 1177.) When sentencing Mr. Corwin, the Court made clear that it was the judgment of the Court "that the defendant shall serve a term of imprisonment of 37 months, and that sentence will begin on July 13th, 2022, when he was detained in this case." (ECF No. 181, PageID 1146, 12:1–4.) The Court also made clear that "the federal time [would] run concurrently with the undischarged state sentence." (*Id.* 12:4–7.) The judgment accurately reflects what the Court stated on the record during sentencing. (ECF No. 121, PageID 754.)

In one of his letters to the Court, Mr. Corwin urges that his "federal time did not count starting 7-13-2022 as [I] was advised, my state time was never paused as she [Ms. Dixon] claimed it would to me multiple times, [i]n court and in the recent affidavit in this reply to the motion." (ECF No. 207.) In the same letter, Mr. Corwin also states that his federal sentence is 37 months from March 6, 2023,[1] the date his sentence was imposed. (*Id.*)

Yet, as discussed above, BoP records indicate Mr. Corwin was released on May 20, 2025, which was around 34 months from July 13, 2022. Even if the BoP miscalculated Mr. Corwin's sentence, a prisoner challenging the calculation of the time remaining on his or her sentence must first exhaust the administrative remedies available under the BoP regulations. *United States v. Westmoreland*, 974 F.2d 736, 737–38 (6th Cir. 1992); *Turner v. United States*, No. 1:05-CR-149,

---

[1] Mr. Corwin's judgment was signed on March 2, 2023, and docketed on March 7, 2023. (ECF No. 121.)

6

2012 WL 13124824, at *1 (S.D. Ohio Aug. 1, 2012) (Beckwith, J.). Mr. Corwin provides no evidence that he exhausted his administrative remedies. Moreover, the "proper vehicle to address the BOP's execution of a sentence is under a 28 U.S.C. § 2241 writ of habeas corpus, not under § 2255." *United States v. Rodgers*, No. CIV. 14-12838, 2014 WL 5511481, at *3 (E.D. Mich. Oct. 31, 2014); *compare* 28 U.S.C. § 2241, *with* 28 U.S.C. § 2255.

Mr. Corwin's U.S.S.G. § 5G1.3 arguments are similarly vague. To the extent Mr. Corwin urges that from the time of his removal from the state system to the federal system on July 13, 2022, until his sentencing and judgment in March 2023, he should have received retroactive concurrent time in the state system, the Court and parties discussed that issue on the record:

> THE COURT: Let me ask you and Ms. Dixon. So I'm usually of the view I want the time to count once, but not twice. How should we deal with the seven months and the few extra days that he's been in the federal custody?
>
> MR. HUNTER: Your Honor, I would have no problem with that counting towards his federal sentence in this case.
>
> THE COURT: All right. Ms. Dixon, you're of the same view?
>
> MS. DIXON: Yes, and I think the seven months that he served has to count towards his federal sentence. I don't believe, Mike, that it would count for his state sentence. In my state practice when this happens, the state specifically does not count it because you've taken him out of their jurisdiction.
>
> THE COURT: So you think that will change his release date, otherwise, with the state system?
>
> MS. DIXON: Correct.
>
> THE COURT: All right. Fair enough. So I'm going to consider all that.

(ECF No. 181, PageID 1145.) The Court gained clarification from counsel on the issue and considered all the above in determining Mr. Corwin's 37-month sentence.

Mr. Corwin has not demonstrated that Ms. Dixon's performance was deficient on ground one, and his § 2255 Motion is denied on that ground.

### 2. Ground Two

Mr. Corwin argues in ground two that his

> lawyer didn't argue to remove a criminal history point for a DUI, which now since Amendment 821 came would make me eligible for a sentence reduction for up to 7 months and until that is removed I'm unable to receive any reduction.

(ECF No. 193, PageID 1178.)

The Government interprets this argument as: "elimination of [a criminal history point for 'reckless operation'], which should not have counted, plus the impact of Amendment 821 to the Sentencing Guidelines, which eliminated two points for an offense committed while in prison, would result in a reduction in criminal history category from III to II." (ECF No. 205, PageID 1211–12.) The Government contends Mr. Corwin is incorrect because, first, Mr. Corwin's criminal history was calculated at six points, which put him at the upper limit of criminal history category III. (*Id.* PageID 1212.) Even if his total points had been reduced to five points, he still would have been at category III. (*Id.*) Mr. Corwin cannot show prejudice even assuming error.

Next, the Government asserts that U.S.S.G. § 4A1.2(c)(1) allows a "careless or reckless driving" offense to be counted when the sentence is for a term of probation of more than one year. (*Id.*) Mr. Corwin served probation for the reckless operation offense from February 2013 to February 2015, so the conviction was properly counted, and one point was attributed. (*See* ECF No. 94, PageID 561); U.S.S.G. § 4A1.1(c).

The Government makes other arguments about the timing of Amendment 821 and a § 2255 Motion not being the proper mechanism for a sentence review based on amended guidelines, but the Court need not summarize or address these arguments because the Government's first two arguments are dispositive. There was no error because the reckless operation conviction was properly counted. Even assuming error, Mr. Corwin cannot show prejudice.

8

Mr. Corwin has not demonstrated that Ms. Dixon's performance was deficient on ground two. Mr. Corwin's § 2255 Motion is also denied on that ground.

### C. An evidentiary hearing is not warranted.

Mr. Corwin has not shown the existence of an error of constitutional magnitude which has had a substantial and injurious effect or influence on his guilty plea. *See Humphress*, 398 F.3d at 858. An evidentiary hearing is not required because the record conclusively shows Mr. Corwin is not entitled to relief. *Huff*, 734 F.3d at 607.

## IV. CONCLUSION

The Motion to Vacate under 28 U.S.C. § 2255 by Movant Jeremy Corwin (ECF No. 193) is **DENIED**. The Clerk is **DIRECTED** to enter judgment and close the case.

**IT IS SO ORDERED.**

**10/28/2025**          s/Edmund A. Sargus, Jr.
**DATE**                 **EDMUND A. SARGUS, JR.**
                         **UNITED STATES DISTRICT JUDGE**